945 F.2d 760
 FRONT ROYAL AND WARREN COUNTY INDUSTRIAL PARK CORPORATION, a
Virginia Corporation; Fred W. McLaughlin; Gladys
L. McLaughlin, Plaintiffs-Appellees,
v.
TOWN OF FRONT ROYAL, VIRGINIA, a municipal corporation;
John Marlow, individually and as Mayor of the Town of Front
Royal; Michael Kitts, individually and as a member of the
Town Council of the Town of Front Royal, Virginia; Edwin L.
Pomeroy, individually and as a former member of the Town
Council of the Town of Front Royal, Virginia; Albert G.
Ruff, Jr., individually and as a former member of the Town
Council of the Town of Front Royal, Virginia; George E.
Banks, individually and as a former member of the Town
Council of the Town of Front Royal, Virginia; Brackenridge
H. Bentley, individually and as Town Manager of the Town of
Front Royal, Virginia, Defendants-Appellants,
Virginia Association of Counties; Local Government
Attorneys of Virginia, Incorporated, Amici Curiae.
FRONT ROYAL AND WARREN COUNTY INDUSTRIAL PARK CORPORATION, a
Virginia Corporation; Fred W. McLaughlin; Gladys
L. McLaughlin, Plaintiffs-Appellants,
v.
TOWN OF FRONT ROYAL, VIRGINIA, a municipal corporation;
John Marlow, individually and as Mayor of the Town of Front
Royal; Michael Kitts, individually and as a member of the
Town Council of the Town of Front Royal, Virginia; Edwin L.
Pomeroy, individually and as a former member of the Town
Council of the Town of Front Royal, Virginia; Albert G.
Ruff, Jr., individually and as a former member of the Town
Council of the Town of Front Royal, Virginia; George E.
Banks, individually and as a former member of the Town
Council of the Town of Front Royal, Virginia; Brackenridge
H. Bentley, individually and as Town Manager of the Town of
Front Royal, Virginia, Defendants-Appellees,
Virginia Association of Counties; Local Government
Attorneys of Virginia, Incorporated, Amici Curiae.
 Nos. 90-1875, 90-1884.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 3, 1991.
Decided Sept. 19, 1991.
 
 Glenn M. Hodge, Wharton, Aldhizer & Weaver, Harrisonburg, Va., argued (Douglas L. Guynn, Mark D. Obenshain, Harrisonburg, Va., David N. Crump, Adamson, Crump & Sharp, Front Royal, Va., on brief), for defendants-appellants.
 Harold Jonathan Krent, University of Virginia School of Law, Charlottesville, Va., argued (Harold P. Juren, G. Timothy Oksman, Joseph P. Rapisarda, Jr., Local Government Attys. of Virginia, Inc., Charlottesville, Va., C. Flippo Hicks, Virginia Ass'n of Counties, Richmond, Va., on brief), for amici curiae.
 Robert C. Fitzgerald, Fitzgerald & Smith, P.C., Fairfax, Va., argued (Myron C. Smith, on brief), for plaintiffs-appellees.
 Before ERVIN, Chief Judge, and SPROUSE and WILKINS, Circuit Judges.
 OPINION
 ERVIN, Chief Judge:
 
 
 1
 Plaintiffs in this consolidated § 1983 action are Warren County Industrial Park Corporation ("Front Royal Corporation") and two Front Royal, Virginia, landowners. They sought damages from the Town of Front Royal ("Front Royal") and several Front Royal officials, alleging that they violated plaintiffs' fifth and fourteenth amendment rights. Although plaintiffs had remedies available to them under state law, they did not pursue those remedies but instead came into federal court seeking relief. The district court granted summary judgment in favor of plaintiffs. We find that the district court should have abstained from ruling in this case and therefore vacate the order granting summary judgment.
 
 
 2
 * Plaintiffs own parcels of land which were annexed by Front Royal in 1976 and 1978 pursuant to separate Annexation Court orders. The orders directed Front Royal to extend sewer service to the parcels of land covered by the annexation orders as expeditiously as practicable, but in any event within 5 years of the entry of the orders. Front Royal failed to extend sewer service to plaintiffs' parcels. As a result, plaintiffs sought to vindicate their rights under the fifth and fourteenth amendments and 42 U.S.C. § 1983 in the United States District Court for the Western District of Virginia.
 
 
 3
 Plaintiffs alleged that the refusal by the defendants to extend sewer service to their parcels deprived them of all economically viable uses of their property. Plaintiffs also contended that they were denied equal protection of the law because defendants provided sewer service to similarly situated landowners within the annexed area, while denying the same service to plaintiffs.
 
 
 4
 Defendants raised several affirmative defenses including absolute legislative immunity and executive qualified immunity. The district court granted plaintiffs' motion to strike the absolute immunity defense, and defendants appealed to this court in an interlocutory appeal. In a previous holding, we upheld the district court's holding that absolute legislative immunity was not available to defendants. Front Royal & Warren County Indus. Park Corp. v. Front Royal, 865 F.2d 77 (4th Cir.1989) ("Front Royal I ").
 
 
 5
 Thereafter, the district court granted plaintiffs' motion to strike defendants' asserted qualified immunity defense. Front Royal & Warren County Indus. Park Corp. v. Front Royal, 708 F.Supp. 1477, 1480-82 (W.D.Va.1989) ("Front Royal II "). On cross motions for summary judgment, the district court granted plaintiffs' motion on the § 1983 takings claim. Id. at 1483-85. The court rejected defendants' argument that (1) there was no compensable taking; and (2) adequate state remedies existed which should have counselled the district court to abstain from hearing the case at all. The district court also granted summary judgment in favor of plaintiffs on the equal protection claim. Id. at 1487. The court held that the actions taken by the town counsel served no legitimate governmental purpose and that the actions deprived plaintiffs of equal protection of the laws. After granting summary judgment in favor of plaintiffs, the district court held a bench trial on the issue of damages and awarded the following amounts: $176,526.56 to the individual landowners and $489,072.59 to the Front Royal Corporation. Front Royal & Warren County v. Front Royal, 749 F.Supp. 1439, 1448-49 (W.D.Va.1990) ("Front Royal III ").
 
 
 6
 Both parties appealed from the judgment of the district court. Defendants alleged that there were numerous erroneous rulings by the district court, and plaintiffs asserted that the court should have awarded punitive damages.
 
 II
 
 7
 The defendants and amici curiae urge us to abstain from ruling in this case. They assert that under Virginia law, alternative remedies were available to plaintiffs. In addition, they argue that land use policy is local in nature and that federal courts should not intrude into this area unless absolutely necessary.
 
 
 8
 We note at the outset that we are not barred from abstaining in this case because we previously issued an opinion in Front Royal I, 865 F.2d 77. There, we addressed the issue of absolute immunity on interlocutory appeal. We held that the district court's order dismissing the absolute immunity defense was immediately appealable. Front Royal I, 865 F.2d at 79. However, the fact that we had jurisdiction over the district court's order regarding absolute immunity did not permit us to review other claims raised below. See Abney v. United States, 431 U.S. 651, 662-63, 97 S.Ct. 2034, 2041-42, 52 L.Ed.2d 651 (1977). We could have considered the abstention issue only if it fell within the exception to the final-judgment rule set out in Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 547, 69 S.Ct. 1221, 1226, 93 L.Ed. 1528 (1949). Therefore, it is proper for us to now consider whether abstention is appropriate even though we have already issued an opinion in this case.
 
 
 9
 Plaintiffs argue that we should not consider the abstention issue because it was not raised by defendants, but was raised by amici curiae on this appeal. We note, however, that we may apply the abstention doctrine at our own instance even if no party urges the doctrine upon us. Caleb Stowe Associates, Ltd. v. County of Albemarle, 724 F.2d 1079, 1080 (4th Cir.1984); AFA Distributing Co. v. Pearl Brewing Co., 470 F.2d 1210, 1213 (4th Cir.1973). Therefore, we turn to the issue of whether we should abstain from ruling on the case before us.
 
 
 10
 In Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), the Supreme Court set out a form of abstention which is appropriate in order to prevent unnecessary interference by the federal courts in the interpretation of a complex state regulatory scheme. This court has explained the purpose of the Burford abstention doctrine as follows:
 
 
 11
 The purpose of Burford abstention is to prevent a federal court from interfering with a "complex state regulatory scheme concerning important matters of state policy for which impartial and fair administrative determinations subject to expeditious and adequate judicial review are afforded." Aluminum Co. v. Utilities Commission of North Carolina, 713 F.2d 1024 (4th Cir.1983), cert. denied, 465 U.S. 1052, 104 S.Ct. 1326, 79 L.Ed.2d 722 (1984).
 
 
 12
 Browning-Ferris, Inc. v. Baltimore County, 774 F.2d 77, 79 (4th Cir.1985).
 
 
 13
 In Browning-Ferris, complex state regulations governing landfill operations were at issue. We held that abstention was proper based on the following reasons:
 
 
 14
 [T]he state regulations governing landfill operations are lengthy and detailed and involve complex scientific questions that must be reviewed before a permit for a waste disposal facility is approved. The Burford requirement that a complex state regulatory scheme be involved in order for a district court to abstain is sufficiently present in this case.
 
 
 15
 Additionally, land use questions, ... are the peculiar concern of local and state governments, and traditionally, federal courts have not interfered with state courts in the area of land use policy.
 
 
 16
 Id. at 79. Similarly, in Caleb Stowe Associates, 724 F.2d 1079 (4th Cir.1984), we abstained from deciding the case because it involved a matter of state and local land use law. Id. at 1080. There,
 
 
 17
 ... all of the plaintiffs' state and federal claims necessarily depend[ed] upon the construction of state land use law concerning the scope of authority of local planning bodies and Boards of Supervisors, the proper interpretation of state and local land use law and county zoning practices and procedure.
 
 
 18
 Id.
 
 
 19
 In Fralin & Waldron, Inc. v. Martinsville, 493 F.2d 481 (4th Cir.1974), we abstained from deciding a land use case because "the courts of Virginia ha[d] extensive familiarity and experience with such matters, and ... should have the initial opportunity to pass upon them." Id. at 482. We noted that a state adjudication might avoid: (1) the necessity of a decision on the federal constitutional questions presented; and (2) "needless friction in federal-state relations over the administration of purely state affairs." Id. at 483.
 
 
 20
 We find the reasoning of the above cases persuasive. Here, we are asked to determine that Front Royal violated the orders of the Annexation Courts and that, as a result, plaintiffs' land was taken without just compensation, and plaintiffs were denied equal protection of the law. All of plaintiffs' claims stem from their assertion that Front Royal violated the Annexation Courts' orders.
 
 
 21
 In Virginia, Annexation Courts are established by statute to determine whether a city or town may annex adjacent land. Va.Code Ann. § 15.1-1035 et seq. (1989 Repl.Vol.). The Annexation Court is composed of three judges designated by the Supreme Court of Virginia. Va.Code Ann. § 15.1-1038 (1989 Repl.Vol.). The Annexation Court is to determine the "necessity for an expediency of annexation" considering the best interests of the city or town and the people in the area to be annexed. Va.Code Ann. § 15.1-1041(b) (Repl.Vol.). If the Annexation Court grants the petition for annexation, the Court "shall set forth in detail all such terms and conditions upon which the petition is granted." Va.Code Ann. § 15.1-1041(d).
 
 
 22
 The Annexation Court "shall enter an order setting forth what it deems fair and reasonable terms and conditions, and shall direct the annexation in conformity therewith." Va.Code Ann. § 15.1-1042 (1989 Repl.Vol.). The Annexation Court remains in existence for 10 years from the effective date of any annexation order entered. Va.Code Ann. § 15.1-1047(a) (1989 Repl.Vol.). The Annexation Court can be reconvened
 
 
 23
 ... at any time during the ten-year period on its own motion, or on motion of the governing body of the county, or of the city or town, or on petition of not less than fifty registered voters or property owners in the area annexed; provided, however, if the area annexed contains less than 100 registered voters or property owners, then a majority of such registered voters or property owners may petition for the reconvening of the court.
 
 
 24
 Va.Code Ann. § 15.1-1047(b) (1989 Repl.Vol.). The Annexation Court has the power during the ten year period to enforce the performance of the terms and conditions under which annexation was granted. Va.Code Ann. § 15.1-1047(c) (1989 Repl.Vol.). Any action by the Annexation Court under § 15.1-1047(c) is subject to review by the Supreme Court of Appeals of Virginia. Va.Code Ann. § 15.1-1047(d) (1989 Repl.Vol.). In addition, "[m]andamus and prohibition shall lie from the Supreme Court of Appeals or any circuit court to compel a city or town to carry out the provisions of [the annexation statute] or to forbid any violation of the same." Va.Code Ann. § 15.1-1048 (1989 Repl.Vol.).
 
 
 25
 In this case, the orders of two separate Annexation Courts are at issue. The 1978 Annexation Court, whose order covered property owned by the Front Royal Corporation, reconvened itself in 1983 after being petitioned by the Front Royal Corporation for the purpose of determining whether its order had been obeyed. Based on representations made by the town at that hearing regarding their plans for adding sewer lines, the Annexation Court found that Front Royal was in substantial compliance with the 1978 order. The 1976 Annexation Court, whose order covered the individual landowners' property, was never reconvened.*
 
 
 26
 At the heart of the case before us is the question whether Front Royal ever complied with the orders of the Annexation Courts. The answer requires interpretation of the Annexation Courts' orders, which is a determination that the Annexation Court was uniquely qualified to make. The annexation system as set up in Virginia is a complex scheme. It involves a court system set up specifically to deal with the annexation process. It provides for appeal to the Virginia courts if the town fails to comply with the Annexation Court's orders. See Va.Code Ann. § 15.1-1048. We believe that this annexation scheme is sufficiently local in nature to warrant our abstaining from deciding the issues before us. Like the claims in Fralin and Caleb Stowe, all of plaintiffs' federal claims necessarily depend upon the construction of state law--here the orders of the Annexation Courts. The courts of Virginia have much greater familiarity with the operations of the Virginia annexation scheme, and we believe that they should have the first opportunity to pass upon them. See Fralin, 493 F.2d at 482.
 
 
 27
 In addition, there are other state remedies which might be available to plaintiffs. The Virginia Constitution provides due process protection to those who have been unlawfully deprived of their property. Va. Const. art. I, § 11. Virginia courts have consistently recognized a common law cause of action to protect this right. See Groves v. Cox, 559 F.Supp. 772, 777 (E.D.Va.1983); Morris v. Elizabeth River Tunnel District, 203 Va. 196, 123 S.E.2d 398 (1962).
 
 
 28
 Because the annexation court system is a matter of purely state and local law, and because there may be other state remedies available to plaintiffs in this case, we vacate the district court's orders granting summary judgment and damages in favor of plaintiffs. However, we think that it is appropriate for the district court to retain jurisdiction over the case pending the outcome of the state proceedings because they may not fully dispose of all of the federal claims. See Caleb Stowe, 724 F.2d at 1080-81 (directing the district court to retain jurisdiction over the case pending a state court determination); Forest Hills Utility Co. v. City of Heath, Ohio, 539 F.2d 592, 596 (6th Cir.1976) (holding that the district court should have retained jurisdiction over the claims pending the outcome of state proceedings when it abstained under the Pullman and Burford doctrines). Therefore, we vacate the district court's orders and remand with instructions to retain jurisdiction of the case pending the outcome of the state court proceedings.
 
 
 29
 VACATED AND REMANDED WITH INSTRUCTIONS.
 
 
 
 *
 We note that 10 years have now run from the date of the Annexation Courts' original orders. Thus, there is a question whether the Courts could be reconvened at this time. However, because of the defendants' behavior in this case contributing to the passing of these deadlines, it might be that the Annexation Courts could reconvene under the special circumstances of this case. That is not for us to decide, however