**Fred W. McLAUGHLIN, and the Estate of Gladys L. McLaughlin, by Merlin McLaughlin, Executor, Plaintiffs,**

v.

**TOWN OF FRONT ROYAL, VIRGINIA, et al., Defendants.**

Civ. A. No. 87–0020–H.

United States District Court,
W.D. Virginia,
Harrisonburg Division.

Dec. 23, 1992.

Myron C. Smith, Robert C. Fitzgerald, Fairfax, VA, for plaintiffs.

David N. Crump, Jr., Adamson, Crump & Sharp, P.C., Front Royal, VA, and Glenn M. Hodge, Douglas L. Guynn, Harrisonburg, VA, for defendants.

## MEMORANDUM OPINION

MICHAEL, District Judge.

This matter is before the court on plaintiffs' motion for this court to exercise its jurisdiction and reinstate the judgment entered on October 22, 1990. The Fourth Circuit Court of Appeals vacated that judgment and remanded to this court "with instructions to retain jurisdiction of the case pending the outcome of the state court proceedings." 945 F.2d 760, 765 (4th Cir. 1991), *cert. denied,* ── U.S. ──, 112 S.Ct. 1477, 117 L.Ed.2d 620 (1992). For the reasons stated herein, this court will reinstate the judgment.

### I.

Plaintiffs Fred W. McLaughlin and Gladys L. McLaughlin[1] own land which was annexed by the defendant Town of Front Royal ("Front Royal") pursuant to an annexation court order effective December 31, 1976. That order directed Front Royal to extend sewer service to the annexed land as expeditiously as practicable, but in any event within five years of the effective date of the order. Front Royal did not extend the sewer service to plaintiffs' land within the specified time. On February 12, 1987, when Front Royal still had not complied with the order, the McLaughlins brought suit in this court under 42 U.S.C. § 1983, claiming violations of the Fifth and Fourteenth Amendments and seeking damages from Front Royal and several Front Royal officials.[2]

---

1. Deceased since commencement of this action.

2. At the same time, in Civil Action No. 87–0019–H, the Front Royal and Warren County Industrial Park Corporation brought similar claims against the same defendants. When previously before this court and on appeal before the Fourth Circuit, the two cases were consolidated. However, the Industrial Park Corporation has

The plaintiffs alleged that defendants' failure to extend the sewer service to plaintiffs' land deprived the plaintiffs of all economically viable uses of their property. The plaintiffs also contended that they were denied equal protection of the law because the defendants provided sewer service to similarly situated landowners within the annexed area, while denying the same service to the plaintiffs.[3]

The defendants raised several affirmative defenses including absolute legislative immunity and qualified immunity. This court granted plaintiffs' motion to strike the absolute immunity defense and the defendants appealed to the Fourth Circuit in an interlocutory appeal. The Fourth Circuit affirmed. 865 F.2d 77 (4th Cir.1989). Thereafter this court granted plaintiffs' motion to strike the qualified immunity defense. 708 F.Supp. 1477 (W.D.Va.1989).

On cross motions for summary judgment, this court granted plaintiffs' motion on both the takings claim and the equal protection claim. *Id.* After a bench trial on damages, this court awarded $176,-526.56 to the McLaughlins, plus costs and fees. 749 F.Supp. 1439 (W.D.Va.1990). The plaintiffs and the defendants both appealed to the Fourth Circuit. On September 19, 1991, the Fourth Circuit vacated this court's orders and remanded with instructions, as noted above and discussed below. 945 F.2d 760. Plaintiffs' petition for a writ of certiorari from the United States Supreme Court was denied on March 23, 1992. —— U.S. ——, 112 S.Ct. 1477, 117 L.Ed.2d 620.

Meanwhile, by notice dated September 20, 1991, the clerk of the Warren County Circuit Court, which maintained the underlying annexation case on its docket, notified counsel in the annexation case, including counsel for both parties to this case, that the court intended to strike the annexation case from its docket. On December 11, 1991, counsel for the plaintiffs filed a writ-

ten request that the case remain on the docket.

In addition, by letter dated December 6, 1991, the plaintiffs requested the Warren County Board of Supervisors "to take such steps as may be available to cause" the annexation court to reconvene for the purpose of determining plaintiffs' claims.[4] The Warren County Board of Supervisors took no steps to reconvene the annexation court.

On December 23, 1991, Warren County Circuit Court Judge John E. Wetsel, Jr. notified counsel in the annexation case, including counsel in this case, that the annexation court had ceased to exist and that the court lacked jurisdiction to extend the annexation court's life. Furthermore, in his letter, Judge Wetsel informed counsel that at his January 21, 1992, motions day, he intended to enter an order dismissing the annexation case. Accordingly, by order entered January 21, 1992, the Warren County Circuit Court dismissed the annexation case.

Subsequently, the plaintiffs moved this court to reinstate the judgment vacated by the Fourth Circuit.

## II.

The plaintiffs in this case argue that they have no remedy to pursue in state court and, therefore, the judgment of this court should be reinstated. First, the plaintiffs argue that the annexation court had ceased to exist and that they had no power to reconvene the annexation court. Nevertheless, the plaintiffs claim that they made an effort to reconvene the annexation court, and thereby comply with the Fourth Circuit mandate, by informing the Warren County Circuit Court of their desire to keep the annexation case on the docket and by requesting the Warren County Board of Supervisors to attempt to reconvene the

---

not moved this court to reinstate the judgment in its favor and, thus, Civil Action No. 87–0019–H is not before the court at this time.

**3.** Sewer lines were made available to the McLaughlins' land on October 11, 1989.

**4.** The Industrial Park Corporation joined in this letter. By similar letter of the same date, the Industrial Park Corporation alone requested the Front Royal Town Council to attempt to reconvene the annexation court.

annexation court on plaintiffs' behalf. In any event, argue the plaintiffs, the annexation court, even if it still existed, had no power to award damages for violations of plaintiffs' constitutional rights. Second, the plaintiffs argue that damages are not available in a Virginia court for a regulatory taking unless the wrongful action of the local government deprives the property owner of all use and all value of his property. Because the plaintiffs were only deprived of most, but not all, of the value of their property, they assert that damages are not available to them in state court.[5]

The defendants maintain that the Fourth Circuit's remand instructions require the plaintiffs to seek redress through the state courts. The defendants argue that because the plaintiffs have instituted no state court proceedings, the plaintiffs have failed to comply with the Fourth Circuit's order. Therefore, say the defendants, this court is without jurisdiction to reinstate the judgment. The defendants pray that the case be dismissed.

### III.

▉ Resolution of this case depends on whether the remand instructions of the Fourth Circuit have been obeyed. Thus, this court must review the Fourth Circuit's opinion to ascertain the purpose and intent of the remand order.

In vacating this court's judgment, the Fourth Circuit relied on the *Burford* abstention doctrine. *See Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). First, the court surveyed its application of *Burford* abstention in land use cases. *See Browning–Ferris, Inc. v. Baltimore County*, 774 F.2d 77 (4th Cir. 1985); *Caleb Stowe Associates, Ltd. v. County of Albemarle*, 724 F.2d 1079 (4th Cir.1984); *Fralin & Waldron, Inc. v. Martinsville*, 493 F.2d 481 (4th Cir.1974). The court explained that "[t]he purpose of *Burford* abstention is to prevent a federal court from interfering with a 'complex state regulatory scheme concerning important matters of state policy for which impartial and fair administrative determinations subject to expeditious and adequate judicial review are afforded.'" 945 F.2d at 763 (quoting *Browning–Ferris*, 774 F.2d at 79 (citation omitted)). In addition, the court stated that land use questions are the peculiar concern of local and state governments, that state courts should have the first opportunity to decide cases involving local and state land use, and that federal courts should not interfere with state courts in this area. 945 F.2d at 763.

Next, the Fourth Circuit reviewed the Virginia statutory scheme of annexation courts. Under that scheme, an annexation court "shall remain in existence for a period of ten years from the effective date of any annexation order entered." Va.Code § 15.1–1047(a) (Michie 1989 Repl.Vol.). In certain circumstances, the annexation court may be reconvened:

> The court may be reconvened at any time during the ten-year period on its own motion, or on motion of the governing body of the county, or of the city or town, or on petition of not less than fifty registered voters or property owners in the area annexed; provided, however, if the area annexed contains less than 100 registered voters or property owners, then a majority of such registered voters or property owners may petition for the reconvening of the court.

Va.Code § 15.1–1047(b) (Michie 1989 Repl. Vol.). In light of the statute, the Fourth Circuit acknowledged that the annexation court in this case had ceased to exist. Nevertheless, addressing this case and its companion case, the court noted:

> [T]here is a question whether the [annexation] courts could be reconvened at this time. However, because of the defendants' behavior in this case contributing to the passing of these deadlines, it might be that the annexation courts could reconvene under the special cir-

---

5. Alternatively, the plaintiffs argued that the Fourth Circuit had effectively reversed its position on abstention. However, the opinion relied upon by the plaintiffs, *Pomponio v. Fauqui-* *er County*, No. 91–1107, 1992 WL 182341 (4th Cir. Aug. 3, 1992), has since been vacated for a rehearing. Thus, that argument is moot.

cumstances of this case. That is not for us to decide, however.

945 F.2d at 764 n. *. The Fourth Circuit also stated that "there are other state remedies which might be available to plaintiffs," such as one arising under the due process or takings clause of the Virginia constitution. *Id.* at 765.

Finally, the Fourth Circuit summarized its ruling and instructed this court as follows:

> Because the annexation court system is a matter of purely state and local law, and because there may be other state remedies available to plaintiffs in this case, we vacate the district court's orders granting summary judgment and damages in favor of plaintiffs. However, we think that it is appropriate for the district court to retain jurisdiction over the case pending the outcome of the state proceedings because they may not fully dispose of all of the federal claims. Therefore, we vacate the district court's orders and remand with instructions to retain jurisdiction of the case pending the outcome of the state court proceedings.

945 F.2d at 765 (4th Cir.1991) (citations omitted).

This court must view the remand instructions in light of the Fourth Circuit's analysis just described. It appears plain to this court that the Fourth Circuit did not intend to deny the plaintiffs all recourse in federal court. The Fourth Circuit could have dismissed this case, but instead directed this court to retain jurisdiction, thereby empowering this court to reinstate the judgment if necessary or appropriate. As this court reads it, if there are state remedies available, either in the annexation court or otherwise, the plaintiffs must pursue those remedies. On the other hand, if there are no state remedies available, the plaintiffs may return to federal court. This court does not read the remand instructions to require the plaintiffs to pursue proceedings in state court even though no state reme-

dies exist, even assuming that such proceedings could properly be instituted. Accordingly, this court must determine whether any state remedies exist.

## IV.

■ Several possible state remedies merit examination. However, as explained below, none is available to the plaintiffs.

### A. *Annexation Court*

The Fourth Circuit suggested that the plaintiffs might have some recourse to the annexation court. The court did not decide whether the annexation court could be reconvened, but left that determination to the state court. *See* 945 F.2d at 764 n. *.

Since remand, the state court has effectively answered the question whether the annexation court could be reconvened. The answer is no. By letter dated December 23, 1991, Warren County Circuit Court Judge Wetsel informed counsel in the annexation case, including both counsel in this case, that as a matter of state law the circuit court lacked jurisdiction to extend the life of the annexation court. Additionally, Judge Wetsel formally dismissed the annexation case from his court's docket on January 21, 1992.

Judge Wetsel's actions were in accordance with applicable Virginia law. When the plaintiffs filed this case in 1987, more than ten years had passed since the annexation court entered its order effective December 31, 1976. Thus, by operation of Virginia Code § 15.1–1047(a), the annexation court had already ceased to exist.[6] Moreover, the annexation court could not be reconvened; the statutes simply do not authorize the annexation court to be reconvened after expiration of the 10–year period. *See* Va.Code § 15.1–1047(b). In any event, the plaintiffs themselves were powerless to reconvene the annexation court either before or after expiration of the 10–year period.

---

**6.** Before its amendment in 1979, Virginia Code § 15.1–1047 gave an annexation court a 5–year period of existence. While the plaintiffs argue that the statutory amendment does not apply

retroactively, the court need not address this question inasmuch as both the 5–year period and the 10–year period have expired.

Even though the annexation court had ceased to exist and could not be reconvened under state law, the plaintiffs took measures to reconvene the annexation court. The plaintiffs asked the Warren County Board of Supervisors to attempt to reconvene the annexation court. As the governing body of the county from which plaintiffs' property was annexed, the Warren County Board of Supervisors was authorized to move to reconvene the annexation court *during* the ten-year period of its existence. *See* Va.Code § 15.1–1047(b). Apparently the county board took no steps in response to plaintiffs' request; at any rate, any efforts by the county board to reconvene the annexation court *after* the ten-year period would have been fruitless. In addition, the plaintiffs unavailingly requested the Warren County Circuit Court to keep the annexation case on its docket. The futility of plaintiffs' actions supports the unavoidable conclusion that the plaintiffs have no recourse in the annexation court, nor did they have such recourse at the time of filing this suit for relief.[7]

### B. *Mandamus*

As the Fourth Circuit acknowledged, 945 F.2d at 764, the annexation statutes provide that "[m]andamus and prohibition shall lie from the Supreme Court of Appeals or any circuit court to compel a city or town to carry out the provisions of this article or to forbid any violation of the same." Va.Code § 15.1–1048 (Michie 1989 Repl.Vol.). Under Virginia law, "[m]andamus is an extraordinary remedy employed to compel a public official to perform a purely ministerial duty imposed upon him by law." *Richlands Medical Ass'n v. Commonwealth*, 230 Va. 384, 337 S.E.2d 737, 739 (1985).

In this case, however, there is simply nothing for any court to compel the defendants to do. The sewer lines are now in place on the McLaughlins' property. Under the circumstances, mandamus is a nullity and offers no remedy to the plaintiffs.

This conclusion is not changed by the fact that the plaintiff in the companion case, the Industrial Park Corporation, has filed a petition for mandamus in state court. That mandamus proceeding seeks to compel the town to extend the sewer lines to the lots of the Industrial Park Corporation. In an opinion entered in that case on October 23, 1992, Judge Wetsel denied defendants' demurrer to the Industrial Park Corporation's prayer for mandamus and damages caused by delay in the construction of the sewer lines. *Front Royal & Warren County Indus. Park Corp. v. Town of Front Royal*, Chancery No. 92–121, slip op. at 8–11 (Warren County Cir.Ct. Oct. 23, 1992). In so ruling, Judge Wetsel recognized that damages may be available as other relief when a writ of mandamus is warranted; he did not recognize a separate damages remedy. *Id.* at 11.

In any event, that action has no bearing on the availability of mandamus to the plaintiffs in this case. There is a fundamental difference between the two cases. In the companion case, sewer lines still have not been fully extended to each of the Industrial Park Corporation's lots; in this case, sewer lines have been installed on the McLaughlins' property. Thus, in the companion case, there remains the possibility that the state court may compel the defendants to extend sewer lines to the Industrial Park Corporation's property; in this case, there is no such possibility. In short, mandamus offers no remedy to the McLaughlins.

### C. *State Takings*

The Virginia Constitution declares "that the General Assembly shall not pass … any law whereby private property shall be taken or damaged for public uses, without just compensation." Va. Const. art. I, § 11.

The right thus conferred may be protected by an inverse condemnation claim in the form of either a common law action or a declaratory judgment action. In remand-

---

7. Because of this finding, this court does not address plaintiffs' argument that the annexation court, even if extant, had no power to award damages for violations of plaintiffs' constitutional rights.

ing, the Fourth Circuit noted that Virginia courts have recognized a common law cause of action to protect the right conferred by Article I, Section 11 of the Virginia Constitution. 945 F.2d at 765 (citing *Groves v. Cox*, 559 F.Supp. 772, 777 (E.D.Va.1983); *Morris v. Elizabeth River Tunnel Dist.*, 203 Va. 196, 123 S.E.2d 398, 400 (1962)); *see also Burns v. Board of Supervisors*, 218 Va. 625, 238 S.E.2d 823, 825 (1977). Likewise, Virginia Code § 8.01–187 prescribes a declaratory judgment action to protect the constitutional right. However, the existence of a cause of action does not bespeak the availability of a remedy. Regardless of the form of the action, the availability of a remedy depends on the underlying takings law.

The plaintiffs argue that under *City of Virginia Beach v. Virginia Land Investment Ass'n No. 1*, 239 Va. 412, 389 S.E.2d 312 (1990), damages are not available in Virginia courts for a regulatory taking unless the owner is deprived of all use and all value of the property. In that case, the Virginia Beach City Council downzoned land owned by the Virginia Land Investment Association No. 1 ("VLIA") from a planned unit development district to an agricultural district. The trial court invalidated the zoning ordinance, but did not award interim damages for the temporary regulatory taking of the property. The Virginia Supreme Court affirmed on both points. With respect to the takings issue, the court held that a taking had not occurred and, therefore, damages were not appropriate:

> At best, VLIA can only show that it was unable to develop its property as a planned unit development. VLIA, however, was able to lease its property after it was downzoned. *The City's ordinance did not constitute a taking because VLIA was not deprived of all economically viable uses of its property.*

389 S.E.2d at 314 (emphasis added). While it does not readily appear whether the majority applied federal or state takings law, or both, the concurrence in that case makes clear that under either the United States Constitution or the Virginia Constitution, the Virginia Supreme Court does not en-

dorse damages awards for a taking unless a landowner is deprived of *all* use of his land. *Id.* at 316 (Lacy, J., concurring).

*Virginia Beach* is supported by earlier pronouncements of the Virginia Supreme Court. For example, the *Virginia Beach* court cited *Commonwealth v. County Utilities Corp.*, 223 Va. 534, 290 S.E.2d 867 (1982). In that case, the State Water Control Board acted to require private sewage utilities either to comply with certain water control standards, which were impossible to attain, or to connect to public utilities' lines. The trial court decreed the Board's actions unenforceable and void, and ruled that the Board's actions constituted a taking in violation of Article I, Section 11 of the Virginia Constitution and Virginia Code § 56–8, which specifically prohibits the taking of the property of a utility without just compensation. *Id.*, 290 S.E.2d at 871. Although the Virginia Supreme Court affirmed on other grounds, it disagreed with the trial court's ruling on the takings issue. The court asserted that "[e]ven where such an exercise [of the police power] results in substantial diminution of property values, an owner has no right to compensation therefor." *Id.* at 872. *See also Bartz v. Board of Supervisors*, 237 Va. 669, 379 S.E.2d 356, 358 (1989) (diminution in property value resulting from institution of condemnation proceedings by county does not constitute compensable taking).

In this case, the record reveals that the McLaughlins' land retained some value even without the mandated sewer lines. Thus, upon application of the law as set forth by the Virginia Supreme Court in *Virginia Beach*, it appears to this court that the plaintiffs could not recover damages in state court for a regulatory taking. In short, the plaintiffs have no state remedy for a regulatory taking.

## V.

In sum, there are no state remedies available to the plaintiffs. Rather, their only available remedy is in federal court. The plaintiffs have already sought relief in federal court and this court has previously entered judgment in their favor. By direct-

ing this court to retain jurisdiction, the Fourth Circuit permitted this court to reinstate the judgment if necessary or appropriate. As recognized by the Fourth Circuit, one factor counseling abstention is that "a state adjudication might avoid ... the necessity of a decision on the federal constitutional questions presented." 945 F.2d at 763 (citing *Fralin & Waldron, Inc. v. Martinsville*, 493 F.2d 481, 483 (4th Cir. 1974)). In this case, the state adjudication, or lack thereof, has not avoided, and could not have avoided, the necessity of this court's decision on the federal constitutional questions. Inasmuch as this court has already decided those questions, all that remains for this court is to reinstate the judgment. Accordingly, for the reasons stated herein, this court will reinstate the judgment of October 22, 1990.

With respect to the underlying dispute as to costs and attorney's fees, the court will allow the plaintiffs to supplement their claim for costs and fees and the defendants to respond. Thereafter the court will resolve the issue.

An appropriate order shall this day issue.

### ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is this day

### ADJUDGED AND ORDERED

as follows:

1. The plaintiffs' motion to reinstate this court's judgment of October 22, 1990 shall be, and it hereby is, granted.

2. This court's judgment of October 22, 1990 shall be, and it hereby is, reinstated.

3. For the reasons stated in this court's Memorandum Opinion and Order of October 22, 1990, compensatory damages in the amount of $176,526.56, costs and attorney's fees incurred through December 4, 1989 in the amount of $39,371.30, plus additional costs and fees as may be shown to the court shall be paid to the plaintiffs by the defendants.

4. The plaintiffs shall make an appropriate showing of such additional costs and fees within twenty days of entry of this

order and the defendants shall respond to the plaintiffs' showing within ten days thereafter.