The ESTATE OF Fred W. McLAUGHLIN, and the Estate of Gladys L. McLaughlin, by Merlin McLaughlin, Executor, Plaintiffs,

v.

TOWN OF FRONT ROYAL, VIRGINIA, et al., Defendants.

No. Civ.A. 87–0020–H.

United States District Court,
W.D. Virginia,
Harrisonburg Division.

March 10, 1998.

Myron C. Smith, Robert C. Fitzerald, Fairfax, VA, for Plaintiffs.

David N. Crump, Jr., Adamson, Crump & Sharp, P.C., Front Royal, VA, Glenn M. Hodge, Douglas L. Guynn, Mark D. Obensh, Harrisonburg, VA, for Defendants.

## MEMORANDUM OPINION

MICHAEL, Senior District Judge.

Before the court are the plaintiffs' August 1, 1997 Motion to Exercise Retained Jurisdiction and to Reinstate Judgment and the defendants' August 28, 1997 Motion to Dismiss. For the reasons stated below, the court will deny the former and grant the latter motion.[1]

### I.

Long ago, plaintiffs Fred W. and Gladys L. McLaughlin brought an action under 42 U.S.C. § 1983 in this court to recover damages from the Town of Front Royal and certain of its municipal officials for an alleged violation of plaintiffs' Federal rights under the Fifth Amendment's Due Process and Takings clauses[2] and the Fourteenth Amendment's Equal Protection clause.

### A. The Federal Case

A fuller recitation of the factual and procedural background of this case follows and is taken, almost verbatim, from *McLaughlin v. Town of Front Royal, et al.*, 21 F.3d 423, 1994 WL 112733 (4th Cir.1994) (unpublished) (per curiam).

> Fred and Gladys McLaughlin own[ed][3] parcels of land in Virginia that were annexed by the Town of Front Royal in 1976 pursuant to an Annexation Court order. The order directed Front Royal to extend sewer service to the parcels of land annexed as expeditiously as practicable, but in any event within 5 years after the entry of the order. Front Royal failed to extend sewer service to the McLaughlins' parcels by the December 31, 1981 deadline.
>
> . . .
>
> The McLaughlins argue[d] that the appellants' refusal to provide sewer service to their property within the timeframe required by the Annexation Court order deprived them of all economically viable uses of their property in violation of their due process rights. They also contend[ed] that they were denied equal protection because sewer service was provided to other similarly situated individuals.

*Id.*, 21 F.3d 423, 1994 WL 112733, *1.

By Order, this court granted summary judgment in favor of the plaintiffs on all counts and entered judgment on their behalf, including an award of attorneys' fees and costs. *McLaughlin*, 708 F.Supp. 1477 (W.D.Va.1989) (summary judgment); *McLaughlin*, 749 F.Supp. 1439 (W.D.Va. 1990) (attorneys fees and costs). The Fourth Circuit vacated the Order and instructed this court to abstain under *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed.

---

1. The court has delayed ruling on the motions until now because a former companion case, *Front Royal and Warren County Industrial Park Corporation v. Town of Front Royal, et al.*, Civil Action No. 87-0019-H, with identical claims and issues, was on appeal to the United States Court of Appeals for the Fourth Circuit. The former companion case, argued October 31, 1996, was decided by a published opinion on January 23, 1998, governs the analysis of the McLaughlins' case, and is discussed more fully below.

2. Amendment V to the United States Constitution reads, in pertinent part:

    No person shall be ... deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

    Amendment V, U.S. Const.

3. Both plaintiffs have died since the commencement of this lawsuit. The McLaughlins had purchased the property at issue in 1964.

1424 (1943) from reaching the merits of the case,[4] instructed the plaintiffs to proceed in State court, and instructed this court to retain jurisdiction pending the plaintiffs seeking redress in the State court. *McLaughlin*, 945 F.2d 760, 765 (1991).

The plaintiffs, rather than filing suit immediately in State court, moved this court to reinstate its earlier verdict, which it did, by Order, on December 23, 1992. *McLaughlin*, 810 F.Supp. 725 (W.D.Va.1992). On appeal, the Fourth Circuit again vacated, directed the plaintiffs to proceed in State court and instructed this court to abstain under *Burford, supra*, but to retain jurisdiction pending the outcome of the necessary State court litigation. *McLaughlin*, 21 F.2d 423, 1994 WL 112733, *2 (1994).

### B. The State Case

On May 18, 1994, the plaintiffs brought a Motion for Declaratory Judgment and for Other Relief against the defendants in the Circuit Court of Warren County, Virginia. The plaintiffs sought a declaratory judgment that the defendants had breached their duty to install the sewer line required by the annexation court and, thereby, had damaged the plaintiffs' property (COUNTS I and V); alleged that the failure to install the sewer line constituted an unconstitutional taking of plaintiffs' property in violation of Article 1, Section 11 of the Constitution of the Commonwealth of Virginia (COUNT II); alleged that defendants' actions were taken under color of State law and were actionable under 42 U.S.C. § 1983 in that the defendants took plaintiffs' property without compensation or

Due Process of law and in contravention of the Equal Protection clause (COUNT III); and alleged a conspiracy by defendants to injure plaintiffs in their trade or business in violation of Virginia Code § 18.2–499 (COUNT IV).

In an Order and Opinion of September 2, 1994, the Circuit Court sustained defendants' plea of the statute of limitations to COUNTS I, II, and V and denied the same plea to COUNTS III and IV. As well, the court denied the defendants' demurrer as to COUNT III's Due Process and Equal Protection claims, but sustained the defendants' demurrer as to COUNT III's unconstitutional[5] taking claim. *McLaughlin*, Chancery No. 94–73, slip op. at 9–10 (Cir.Ct. Warren County September 2, 1994) (Wetsel, J.).

Thereafter, the State court heard cross motions for summary judgment. On February 28, 1996, the court entered summary judgment in favor of the defendants as to COUNT IV and entered summary judgment in favor of the plaintiffs as to COUNT III's substantive Due Process and Equal Protection claims. Both parties appealed the amended final order of July 25, 1996 to the Virginia Supreme Court which denied both appeals as well as the defendants' petition for rehearing.

On July 29, 1997, the Town of Front Royal paid the State court judgment of $54,421.00, together with interest at the rate of 9% *per annum* from October 10, 1989.

---

4. *Burford* abstention, the Fourth Circuit stated, "prevent[s] a federal court from interfering with a complex state regulatory scheme concerning important matters of state policy for which impartial and fair administrative determinations subject to expeditious and adequate judicial review are afforded." *McLaughlin*, 945 F.2d at 763 (citations and quotations omitted).

5. Contrary to the plaintiffs' contention in their instant motion that "[n]o disposition was made of the federal takings claim in Count III ..." by the court in its September 1994 Order, the court, in sustaining defendants' demurrer as to COUNT III, indeed did dispose of the Federal takings claim. The plaintiffs, in COUNT III, had alleged an unconstitutional taking in violation of the *Federal* Constitution subject to redress under 42 U.S.C. § 1983. The text of § 1983 makes clear

that a cause of action under the statute concerns alleged deprivations of Federal, not State, rights:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State ... subjects, or causes to be subjected, any citizen of United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983; *see also Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (§ 1983 creates a "species of tort liability" for violation of certain *Federal* rights). Looking to the Motion for Declaratory Judgment itself, more simply, while COUNT III alleged a *Federal* taking, COUNT II alleged a *State* taking.

## C.  The Companion Federal Case

Early in both the trial and appellate court proceedings of the plaintiffs' Federal case, the case was consolidated with *Front Royal and Warren County Industrial Park Corporation v. Town of Front Royal, et al.*, Civil Action No. 87–0019–H (*"Front Royal IPC"*). The lawsuits involve identical claims against the same group of defendants.  While the plaintiffs nominally differ in the cases, Fred McLaughlin was the sole shareholder of the Industrial Park Corporation ("IPC").  This court consistently has reached similar conclusions in the two cases; the Court of Appeals consistently has reached contrarily similar conclusions.  While the two cases no longer are consolidated, but rather independently have bounced back and forth between the two courts, the rulings in one necessarily inform those in the other.

Recently, the Fourth Circuit issued an opinion in *Front Royal IPC*, 135 F.3d 275 (4th Cir.1998).  As in *McLaughlin*, the Court of Appeals previously had vacated, on the basis of *Burford* abstention, this court's grant of summary judgment and damages to IPC.  *Id.*, 135 F.3d 275, 276 (citing *Front Royal IPC*, 945 F.2d 760 (4th Cir.1991), *cert. denied*, 503 U.S. 937, 112 S.Ct. 1477, 117 L.Ed.2d 620 (1992)).  The appellate court had "instructed the district court to retain jurisdiction pending the outcome of state court proceedings."  *Id.*  In those proceedings, the same Warren County Circuit Court had "grant[ed] a writ of mandamus to compel the Town to extend sewer lines to each of IPC's lots, but it refused to award damages under state law."  *Id.* (citations omitted).  The Virginia Supreme Court had affirmed the grant of mandamus.  *Id.* (citations omitted).  IPC then had moved this court to reinstate its prior judgment in favor of the plaintiff and to modify the damages award to reflect additional attorney's fees.  The court granted the motion and awarded IPC damages and fees.  *Id.*, 135 F.3d 275, 276 (citing *Front Royal IPC*, 922 F.Supp. 1131 (W.D.Va. 1996)).[6]

Among other things, the recent Fourth Circuit opinion in *Front Royal IPC* determined that the plaintiff's Federal takings, substantive Due Process, and Equal Protection claims had been ripe for review by the district court when it granted the motion to reinstate the earlier judgment in favor of IPC after abstaining in favor of the State proceedings.  *Id.*, 135 F.3d 275, 283 ("... [W]e determine that the district court below properly reached the merits, and so now must we.").  In reviewing the merits, however, the Court of Appeals reversed this court's grant of summary judgment to IPC on each of the three claims, directed this court to dismiss those claims, and reversed the award to IPC of compensatory damages and attorneys' fees.  *Id.*, 135 F.3d 275, 290.

### II.

The holding and analysis of the law by the Fourth Circuit in *Front Royal IPC*, 135 F.3d 275 (4th Cir.1998) are highly relevant, of course, to the McLaughlins' claims and bear directly on the instant motions.

### A.  Regulatory Takings

In *Front Royal IPC*, the Fourth Circuit began its analysis of the plaintiff's Federal takings claim by stating that:

in *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992), the Supreme Court noted that there exist two distinct categories of governmental regulatory action that may result in a taking for which just compensation is due under the Fifth Amendment.  First, regulations that compel a physical invasion of an owner's property are takings, no matter how slight the invasion or how weighty the public interest advanced to support them.... Second, regulations that deny 'all economically beneficial or productive use of land' are compensable takings.

---

**6.**  In recently characterizing *Front Royal IPCs'* history (again, similar to that in *McLaughlin*) as "... ha[ving] already passed through procedural purgatory and wended its way to procedural hell[,]" 135 F.3d 275, 283, the Court of Appeals invokes Dante's *The Divine Comedy*.  While it cannot be gainsaid that the cases' histories perhaps resemble a "comedy" (in the formal definition) in that they may seem, at times, to have been medieval narrative, one may question whether the cases will prove to have ended happily.

*Id.,* 135 F.3d 275, 285 (citing *Lucas,* 505 U.S. at 1015; *Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982); *Nollan v. California Coastal Comm'n,* 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987); and *Keystone Bituminous Coal Ass'n v. DeBenedictis,* 480 U.S. 470, 107 S.Ct. 1232, 94 L.Ed.2d 472 (1987)). The court noted that "... a taking exists where the owner of real property is forced to 'sacrifice *all* economically beneficial uses ..., that is, to leave his property economically idle.'" *Id.* (quoting *Lucas,* 505 U.S. at 1019) (emphasis in original). The court determined that while "... temporary, but total, regulatory takings are compensable[,] ... [i]t is unanswered and much less clear, although arguable, that a partial regulatory taking may be compensable." *Id.* (citing *First English Evangelical Lutheran Church v. County of Los Angeles,* 482 U.S. 304, 321, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987)).

The Fourth Circuit, looking to the Supreme Court's regulatory takings jurisprudence, next declared that:

... under this jurisprudence we can see absolutely no warrant for the proposition that where the government does not affirmatively prohibit the realization of investment-backed expectations, but merely refuses to enhance the value of real property, a compensable taking has occurred. We must seriously question the nature of IPC's claimed property interest that has allegedly been taken. This property interest is nothing but an inchoate interest in the conferral of a benefit to enhance market value. To find it to be a compensable taking would open up an incredible Pandora's Box. Even were such an inchoate interest a stick in the bundle of property rights, it is clearly not one of the classical property fights of possession, use, and disposition.

*Id.* (citing *Loretto,* 458 U.S. at 435; *Kaiser Aetna v. United States,* 444 U.S. 164, 176, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979)).

Focusing, again, on the requirement under *Lucas* that a taking occurs only when the government forces an owner of real property to sacrifice all economically beneficial uses of his land, the Fourth Circuit concluded that here "... the government did not do anything to deny IPC the right to use its property for an industrial park." *Id.,* 135 F.3d 275, 286. To the contrary, IPC's investment-backed expectations were not defeated because "[w]hen IPC purchased the land in 1973 and 1974, that investment could not have been backed by the expectation that its land would be provided with public sewer service." *Id.,* 135 F.3d 275, 287. Accordingly, the Fourth Circuit held that "IPC's property interest ... falls on the side of those regulatory deprivations that result in the mere diminution in value of the tract as a whole and for which compensation is not due." *Id.,* 135 F.3d 275, 286.[7]

██ Applying this holding and reasoning to the facts of the case at bar, the court must deny the instant motion to reinstate its previous judgment in favor of the McLaughlins. Likewise, the court must grant defendants' motion to dismiss the plaintiffs' Federal takings claim. Because the Fourth Circuit concludes that the Town's failure to bring sewer service to the industrial park does not rise to the level of a taking because the failure does not deny IPC "all productive use" its property *qua* industrial park, and constitutes, at most, a "mere diminution in value of the tract as a whole," this court must arrive at the same conclusion about the McLaughlin homeplace, at issue in this case.[8] With respect to the latter property at issue in this case, the recent Fourth Circuit precedent discussed at length above requires this court to find that the Town's denial of sewer hook-

---

**7.** The court added, "As unfortunate as the appellants' behavior has been, however, it simply does not constitute a taking under federal constitutional law. This is precisely why, under the circumstances of this case, we left it to the state court system to mete out the appropriate remedy for appellant's long-standing refusal to supply the sewer lines." *Id.,* at 287.

**8.** The McLaughlins' land, bought by them in 1964 when it lacked a sewer hook-up, presumably had economically productive value from the date of purchase to the date of sewer connection. Thus, under the reasoning of the most recent opinion in *Front Royal IPC,* the untimely installation could not have rendered the property completely valueless *qua* residential property.

up to the plaintiffs was the denial of an "inchoate interest in the conferral of a benefit to enhance market value" and, thus, not a taking for which just compensation is owed.

As well, because the Circuit Court of Warren County sustained the defendants' demurrer to COUNT III of the Motion for Judgment with respect to the takings claim under the Virginia Constitution and because "[t]he federal standard for determining when a taking has occurred . . . is identical to the Virginia standard[,]" *McLaughlin,* 21 F.3d 423, 1994 WL 112733, *2 (4th Cir.1994) (unpublished) (per curiam), the court will grant the motion to dismiss the Federal taking claim herein.

### B. Substantive Due Process and Equal Protection

Again, when the Court of Appeals vacated the judgment of this court for the first time, it remanded the case with instructions to abstain under the *Burford* doctrine, *supra,* but ". . . to retain jurisdiction pending the outcome of the state court proceedings." *McLaughlin,* 945 F.2d 760, 765 (4th Cir. 1991), *cert. denied,* 503 U.S. 937, 112 S.Ct. 1477, 117 L.Ed.2d 620 (1992). When this court later reinstated its previous judgment, it did so after concluding that ". . . there [we]re no state remedies available to the plaintiffs. Rather, their only available remedy [wa]s in federal court . . . . [and that] [b]y directing this court to retain jurisdiction, the Fourth Circuit permitted this court to reinstate the judgment if necessary or appropriate." *McLaughlin,* 810 F.Supp. 725, 731–32 (W.D.Va.1992). When the Court of Appeals once again vacated judgment and remanded the action for it to be stayed, the court declared:

> The district court was not empowered to hear the case again until the McLaughlins had pursued their state remedies. Rather than present a claim in state court, however, the McLaughlins returned directly to the district court. Such behavior is not permitted.

*McLaughlin,* 21 F.3d 423, 1994 WL 112733, *2 (4th Cir.1994) (unpublished) (per curiam)

(citing *National Capital Naturists v. Board of Supervisors,* 878 F.2d 128, 130 (4th Cir. 1989)).

■ Thereafter, the McLaughlins brought their State court action and, eventually, were granted partial summary judgment on their Federal substantive Due Process and Equal Protection claims. As well, the State court awarded the plaintiffs damages in the amount of $54,421.00, together with interest at the rate of 9% *per annum* from October 10, 1989. *McLaughlin,* Chancery No. 94–73, slip op. at 23 (Circ.Ct. Warren County, February 28, 1996) (granting partial summary judgment); *McLaughlin,* Chancery No. 94–73, amended final decree at 3–4 (Circ.Ct. Warren County, July 25, 1996) (assessing damage amount).

As to the Federal substantive Due Process and Equal Protection claims litigated in State court, this court need not reexamine the State court's legal analysis or application of law to the facts of the case before it. With respect to the Due Process claim, at least, the Fourth Circuit, in its most recent *Front Royal IPC* opinion, discussed *supra,* stated that "governmental action offends substantive due process only where the resulting deprivation of life, liberty, or property is so unjust that no amount of fair procedure can rectify it." *Front Royal IPC,* 135 F.3d 275, 287 (4th Cir.1998). The State court proceedings fairly fixed the Due Process violation suffered by the McLaughlins and awarded damages in an amount as close to appropriate as can be expected at present. With respect to both the Due Process and Equal Protection claims, moreover, the Warren County Circuit Court decision is a final judgment in a State court and, therefore, must be given "the same full faith and credit in every court within the United States" as it possesses by law in the Virginia judiciary. 28 U.S.C. § 1738 (West 1966 & Supp.1993) (emphasis added).[9] Accordingly, as with the McLaughlins' takings claim, this court will decline to reinstate its prior judgment and will dismiss the plaintiffs' Due Process and

---

9. Application of the legal doctrines of *res judicata* and *collateral estoppel* lead to the same conclu-

sion.

Equal Protection claims, thereby giving full effect to the final State court judgment.

### III.

In one posture or another, this case has been pending on the docket for eleven years—sixty-five percent as long as this court has been on the bench. During that time, the court, unfortunately, has heard more than a few cases alleging the type of illegal favoritism by local governmental entities and officials at issue in this case. The court is in entire agreement with the view on this point expressed by Judge Wetsel in his February 28, 1996 Opinion when he wrote:

> The whimsical and parochial nature of the Town's actions is dramatically illustrated by the fact that seven months after [it] refused to grant [the McLaughlins'] application for sewer service in the annexed area, the Town Council approved Mayor Marlow's application for sewer service in the annexed area. Even Shakespeare's Julius Caesar saw the wrong in such governmental favoritism:
>
> Artemidorus.
>
> O Caesar, read mine first; for mine's a suit
>
> That touches Caesar nearer. Read it, great Caesar.
>
> Caesar.
>
> What touches us ourself shall be last served.

*McLaughlin,* Chancery No. 94–73, slip op. at 16 (Circ.Ct. Warren County) (quoting *Julius Caesar,* Act III, Scene 1).

Judge Wetsel, fortunately, has given renewed vitality to the thoughts of William Pitt, the Elder, Earl of Chatham, who, on separate occasions, remarked that although "[u]nlimited power is apt to corrupt the minds of those who possess it[,]" "[t]here is something behind the throne greater than the King himself." In this case, that "something" proved in part, at least, to be the Constitution of the United States of America.

An appropriate Order this day shall issue.

### ORDER

Upon consideration of (1) the plaintiffs' August 1, 1997 Motion to Exercise Retained Jurisdiction and to Reinstate Judgment and (2) the defendants' August 28, 1997 Motion to Dismiss and for the reasons stated in the accompanying Memorandum Opinion, it is this day

### ADJUDGED AND ORDERED

as follows:

(1) that the plaintiffs' August 1, 1997 Motion to Exercise Retained Jurisdiction and to Reinstate Judgment shall be, and it hereby is, DENIED;

(2) that the defendants' August 28, 1997 Motion to Dismiss shall be, and it hereby is, GRANTED;

(3) that this case shall be, and it hereby is, DISMISSED with prejudice and STRICKEN from the docket of this court.

The Clerk of the Court hereby is directed to send a certified copy of this Order and the accompanying Memorandum Opinion to all counsel of record.