**NATIONAL CAPITAL NATURISTS, INC., a Virginia nonstock corporation; Turner Stokes; John L. Kyff; Craig A. Wickmann; Karen R. Wickmann; Richard A. Smith; John D. Fitz-Gerald; Patricia L. Fitz-Gerald; Alfred Heymann; Kris Templeton; Carol Skaritza; John W. Guntner, III, Plaintiffs–Appellants,**

v.

**BOARD OF SUPERVISORS OF ACCOMACK COUNTY, VIRGINIA; Edward F. Gardner, Sheriff; Gary R. Agar, Commonwealth Attorney, Defendants–Appellees.**

No. 88–3631.

United States Court of Appeals, Fourth Circuit.

Argued March 6, 1989.

Decided June 15, 1989.

Rehearing and Rehearing In Banc Denied July 19, 1989.

---

John Patrick McGeehan (John P. McGeehan & Associates, Alan Rosenblum, Rosenblum & Rosenblum, on brief) for plaintiffs-appellants.

Bruce D. Jones, Jr., County Atty., for defendants-appellees.

Before WIDENER and WILKINSON, Circuit Judges, and DOUMAR, United States District Judge for the Eastern District of Virginia, sitting by designation.

WILKINSON, Circuit Judge:

The National Capital Naturists, Incorporated, an organization of social nudists, seeks to enjoin enforcement of an Accomack County ordinance which generally prohibits public nudity in the county. The district court abstained from ruling on the federal issues in the lawsuit under *Railroad Comm'n of Texas v. Pullman*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), and stayed the action pending state court resolution of various state law challenges to the Accomack County ordinance. The Naturists have now returned from state court and appeal a district court judgment which denied their motion to terminate the stay.

We hold that the district court did not abuse its discretion in denying appellants' motion to lift the stay of proceedings. Both the district court and this court on appeal required appellants to obtain an authoritative state court decision on the validity of the Accomack ordinance under state law and its applicability to the activities of appellants. Because appellants failed both to file a timely petition for appeal to the Virginia Supreme Court and to submit their state constitutional claims to state trial court, we find no error in the declination of

the district court to hear their claims. To reverse the district court would both frustrate the purposes of *Pullman* abstention and reward a litigant whose treatment of the state court system was at best cavalier.

## I.

Section 9.3 of the Accomack County Code prohibits "a state of nudity" in public places with the exception of nudity in the exhibition of any play, ballet, drama, production, tableau or motion picture in any establishment devoted to such exhibitions. The Naturists had planned certain displays of nudism along a beachfront on Assateague Island. Among the activities scheduled were airbathing, sunbathing, and the staging of "an original drama" especially conceived for the occasion. The ordinance reads in pertinent part that:

(A) As used in this Ordinance, "state of nudity" means a state of undress so as to expose the human male or female genitals, pubic area or buttocks with less than a full opaque covering, or the showing of the female breast with less than a fully opaque covering of any portion thereof below the top of the nipple.

(B) It shall be unlawful for any person to knowingly, voluntarily and intentionally appear in public, or in a public place, or in a place open to the public or open to public view, in a state of nudity or to employ, encourage or procure another person to so appear.

(C) Nothing contained in this Ordinance shall be construed to apply to the exhibition, presentation, showing or performance of any play, ballet, drama, tableau, production or motion picture in any theater, concert hall, museum of fine arts, school, institution of higher learning or other similar establishment which is primarily devoted to such exhibitions, presentations, shows or performances as a form of expression of opinion, communication, speech, ideas, information, art or drama, as differentiated from commercial or business advertising, promotion or explication of nudity for the purpose of advertising, promoting, selling or serving products or services or otherwise advancing the economic welfare of a commercial or business enterprise, such as a hotel, motel, bar, nightclub, restaurant, tavern or dance hall.

In their initial complaint, appellants claimed the ordinance violated their First, Fourth, Fifth, Ninth and Fourteenth Amendment rights under the federal Constitution; Article 1, Sections 1, 8, 11, 12, and 16 of the Virginia Constitution; and exceeded the authority granted the Accomack County Board of Supervisors under the laws of the Commonwealth. The Naturists sought both declaratory and injunctive relief.

The district court abstained from exercising jurisdiction pending state court resolution of the state statutory and constitutional issues. *See Railroad Comm'n v. Pullman*, 312 U.S. at 496, 61 S.Ct. at 643. The district court sought, *inter alia*, a state court clarification of the terms of the ordinance, and a determination of whether the ordinance was consistent with the state statutes on obscenity and indecent exposure. Va.Code Ann. §§ 18.2–372–18.2–379 and 18.2–387. This court affirmed the abstention on two grounds. First, the authority of the Accomack Board of Supervisors to enact Section 9.3 required a determination of state legislative intent "appropriately made by a state tribunal." Second, a clarification of such terms as "public," "in a public place," "in a place open to the public," and "open to public view," might modify or obviate the need to resolve the federal constitutional questions. *National Capital Naturists v. Board of Supervisors of Accomack County*, 795 F.2d 82 (4th Cir.1986). These statutory terms had not previously been defined by a state tribunal.

Plaintiffs then brought suit in the Virginia Circuit Court for Accomack County seeking a state interpretation of the ordinance and alleging that the Accomack County Board of Supervisors had exceeded its authority under Va.Code Ann. § 15.1–510, which allows the county to adopt measures to secure and promote the health, safety, and general welfare of county residents. In their complaint before the

Accomack County court, appellants chose not to submit for resolution their state or federal constitutional claims. Appellants did, however, inform the state court of their pending constitutional claims, alleging that the ordinance violates their "constitutional rights of expression, assembly, privacy and due process." *See England v. Louisiana State Board of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964).

On May 26, 1987, the Circuit Court of Accomack County held in a brief letter ruling that the words and phrases of the ordinance had a "generally understood meaning," and found that the ordinance applied to the activities of appellants. The court further held that the ordinance's restrictions upon nudity were within the county's police powers under Virginia law. Appellants then failed to perfect a timely appeal of that decision to the Virginia Supreme Court, missing a mandatory filing deadline by some twenty days. The Virginia Supreme Court denied appellants' motion for an extension of time in which to file a petition for appeal.

The Naturists returned to district court, moving that the stay of federal proceedings be lifted. The district court denied the motion, finding that plaintiffs had not sought a state court ruling on the state constitutional claims raised in their earlier complaint and had not sought an authoritative state court construction on the issues raised in the Accomack Circuit Court. The district court also declined to certify the state issues to the Virginia Supreme Court, stating that to do so would excuse plaintiffs' lack of compliance with the earlier order of abstention and render the decision of the Accomack Circuit Court a virtual nullity. The Naturists now appeal that decision.

## II.

■ The propriety of *Pullman* abstention is not before us in this case. Rather, the exercise of such abstention is the law of the case, and the Naturists' efforts in the aftermath of that abstention are at issue. Although there is no exhaustion of state remedies requirement under *Pullman* abstention, it lies within the discretion of the district court to refuse to lift a stay of the federal action if there has not been an adequate effort on the part of a *Pullman* plaintiff to obtain an appropriate state court adjudication. Obviously, a meaningful state court determination of state law is impossible unless the adversary process functions properly in state court. While it may not be possible to say what constitutes an adequate effort in all cases, we think the inadequacy of appellants' efforts in state court is apparent here.

The prior decision of this circuit indicated that both the validity of the ordinance under state law and the sweep of its prohibitions were in question. State law challenges to the ordinance, both facially and as applied, might have resolved or at least have narrowed the federal constitutional questions. Specifically, it would have aided this court to learn which activities planned by appellants ran afoul of the local ordinance or the relevant state statutes on obscenity and indecent exposure, and which activities enjoyed protection under state constitutional provisions. All nudity is not violative of state law, *Price v. Commonwealth,* 214 Va. 490, 201 S.E.2d 798, 800 (1974); *Upton v. Commonwealth,* 211 Va. 445, 177 S.E.2d 528, 530 (1970); *House v. Commonwealth,* 210 Va. 121, 169 S.E.2d 572, 577 (1969), and construction of the relevant state provisions may have provided time, place, and manner determinations which would have assisted our resolution of the Naturists' federal questions. *Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 308, 99 S.Ct. 2301, 2314, 60 L.Ed.2d 895 (1979). To take but one example, only an "obscene display or exposure" of the person is prohibited by the Virginia indecent exposure statute, Va. Code Ann. § 18.2–387, and the consistency of the Accomack ordinance with that section of Virginia law presents an unsettled state question. *See Erznoznik v. City of Jacksonville,* 422 U.S. 205, 211 n. 7, 95 S.Ct. 2268, 2273 n. 7, 45 L.Ed.2d 125 (1975) (public nudity "traditionally subject to indecent exposure statutes").

In a case such as this, we believe that the Virginia Supreme Court should have been provided an opportunity to pass on the issues. Simply put, "these enactments should [have been] ... exposed to state construction or limiting interpretation before the federal courts are asked to decide upon their constitutionality, so that federal judgment will be based on something that is a complete product of the State, the enactment as phrased by its legislature and as construed by its highest court." *Harrison v. NAACP*, 360 U.S. 167, 178, 79 S.Ct. 1025, 1031, 3 L.Ed.2d 1152 (1959). *See also Leiter Minerals, Inc. v. United States*, 352 U.S. 220, 228–29, 77 S.Ct. 287, 292–93, 1 L.Ed.2d 267 (1957). This was not a case such as *City of Houston v. Hill*, 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987), in which municipal courts had "regularly applied an unambiguous statute, [and] there is certainly no need for a federal court to abstain until state appellate courts have an opportunity to construe it." *Id.* at 470, 107 S.Ct. at 2514. Unlike the ordinance in *City of Houston*, which banned political criticism directed at police officers, the enactment here furthered sensitive state and local interests in the regulation of public displays of nudity—an area where the comity concerns underlying the doctrine of *Pullman* abstention should have been apparent.

The Naturists' untimely petition for appeal to the Virginia Supreme Court did not provide that court with a reasonable opportunity to pass on the issues. The Naturists candidly acknowledge that there was no "good cause" for their untimely filing; they contend only that their lateness was not intentional. While the record may not support a finding of bad faith, we think the dangers in appellants' course of conduct are apparent: namely, that a *Pullman* plaintiff bent on returning to federal court could proceed in a most perfunctory fashion in state court, procedurally dooming his own state case, but at a substantial savings in time and money. Under the principles of comity, which require that " 'scrupulous regard for the rightful independence of state governments' " should guide the federal courts, procedural failings in state proceed-

ings should not meet encouragement in the federal system. *Pullman*, 312 U.S. at 501, 61 S.Ct. at 645 (citation omitted).

■ Appellants argue that the Virginia Supreme Court could have accepted their appeal, despite their failure to perfect it in a timely manner. However, the rule of timeliness here is mandatory. *Condrey v. Childress*, 203 Va. 755, 127 S.E.2d 150 (1962). Petitions for appeal must be filed within four months of final judgment; appellants were twenty days late. Although they did move to extend the time in which to present their petition for appeal, the Virginia Supreme Court could grant such a motion only if it were found that to deny the extension would abridge a constitutional right. *Tharp v. Commonwealth*, 211 Va. 1, 175 S.E.2d 277 (1970). Since appellants had expressly reserved both their state and federal constitutional claims below, the Virginia Supreme Court did not grant an extension. Moreover, the Virginia courts are not required to violate their own rules of jurisdiction in order to accommodate untimely appeals on the part of *Pullman* plaintiffs. *Cf. Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 17 n. 16, 107 S.Ct. 1519, 1529 n. 16, 95 L.Ed.2d 1 (1987) ("Texaco cannot escape *Younger [v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)] abstention by failing to assert its state remedies in a timely manner."). To allow appellants to return to federal court under these circumstances would only encourage sloppy lawyering and disrespect for state procedure.

■ Finally, we hold that the federal trial court did not abuse its discretion in declining to certify the state law issues in this case to the Virginia Supreme Court. The Virginia certification procedure did not become effective until April 1, 1987, and was thus unavailable at the time that the exercise of *Pullman* abstention was affirmed by prior decision of this court. 11 Va.Code Ann. Rule 5:42. Had certification been available, it may, as the trial court recognized, have provided an "efficient method of obtaining an authoritative determination of the unsettled state questions." We are now faced, however, with the pros-

pect of certifying to the Virginia Supreme Court questions on behalf of a litigant who has failed to comply with that court's jurisdictional time bar on direct appeal. To certify the matter under these circumstances would not assist the development of "a cooperative judicial federalism," which certification procedures are designed to achieve. *Lehman Brothers v. Schein*, 416 U.S. 386, 391, 94 S.Ct. 1741, 1744, 40 L.Ed.2d 215 (1974).

### III.

■ Appellants also failed to raise their state constitutional claims in state court. The presence of parallel state and federal constitutional claims does not in itself provide sufficient reason for a federal court to abstain. *See Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 237 n. 4, 104 S.Ct. 2321, 2327 n. 4, 81 L.Ed.2d 186 (1984). *See also Examining Board of Engineers v. Flores De Otero*, 426 U.S. 572, 598, 96 S.Ct. 2264, 2279, 49 L.Ed.2d 65 (1976). Once abstention was exercised on other grounds, however, appellants should have presented their state constitutional claims to state court.

Plaintiffs' state constitutional challenges to the Accomack County ordinance clearly raised a potentially controlling question of state law which might have resolved or modified the nature of the federal constitutional questions. The fact that language in a state constitution may parallel that in the United States Constitution is no reason to suppose that the lines of decisional authority under those provisions will invariably be identical. *See Robert v. Norfolk*, 188 Va. 413, 49 S.E.2d 697, 700 (1948). While state court decisions often draw upon federal decisional law, there has also been a willingness on the part of state courts to invalidate provisions under state law that would have withstood federal constitutional scrutiny. *See PruneYard Shopping Center v. Robins*, 447 U.S. 74, 81, 100 S.Ct. 2035, 2040, 64 L.Ed.2d 741 (1980) (affirming California's "sovereign right" to interpret expansively its state constitution); Oakes, State Courts in a Time of Federal Constitutional Change, 13 Vt.L.Rev. 323 (1988); Brennan, State Constitutions and the Pro-

tection of Individual Rights, 90 Harv.L. Rev. 489 (1977).

Such state court decisions promote the purposes of *Pullman* abstention by avoiding needless consideration or invalidation of a state enactment on federal grounds. Moreover, even if Virginia and federal constitutional provisions were to be interpreted in an identical fashion, a state court decision that a particular prohibition on appellants' activity violated state law would render unnecessary the adjudication of a federal claim. Appellants themselves press numerous state constitutional claims in their federal complaint; thus it was even more appropriate to submit to the controlling voice of state courts their state constitutional objections. To do so would in no way prejudice their right to return to federal court with properly reserved questions of federal constitutional law upon which the state's ruling on a parallel state provision could not have been preclusive. *See Almodovar v. Reiner*, 832 F.2d 1138, 1141 (9th Cir.1987).

Our aim is not to make the *Pullman* plaintiff's sojourn in state court a procedural minefield which will deprive litigants of their jurisdictional entitlement to a federal forum. The interest of any litigant in having a federal court adjudicate its federal claims is not to be lightly disregarded. Historically, however, that interest has had to be accommodated to the interest of states in interpreting their own laws and to the interest of federal courts in not reaching significant constitutional questions prematurely. These systemic concerns have occasionally been thought to justify even the imposition of additional burdens upon particular litigants. While *Pullman* abstention, or for that matter certification, is to be the exception, not the rule, its implementation cannot be permitted to become an empty gesture. Procedural defaults in state court are not without consequences for subsequent federal litigation.

The judgment of the district court is therefore

AFFIRMED.